# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CRIMINAL NO.  1:09CR13

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **VS.** | ) | **O R D E R** |
| | ) | |
| | ) | |
| **ANAY LOPEZ BELTRAN** | ) | |
| **DENNIS LAMAR BRUTON** | ) | |
| **YVONNE MARIE FOUNTAIN** | ) | |
| _____ | ) | |

**THIS MATTER** came on for hearing before the Court on April 6, 2009, on Defendant Bruton's motion to suppress which was joined by Defendants Fountain and Beltran.  *See* **Order, filed April 3, 2009 (allowing Fountain's motion for joinder); Defendant Beltran's Notice to Adopt Motions of Co-Defendants, filed March 19, 2009.** The captioned Defendants were present with counsel, as was the attorney for the Government.  An interpreter was provided for Defendant Beltran.  After review of the brief filed by Defendant Bruton, the Government's response, the oral testimony, and the arguments of counsel, the motion to suppress is denied.

## I.  BACKGROUND

Defendants Bruton, Fountain, and Beltran were charged, along with 12 co-Defendants, in a two-count indictment with conspiracy to possess with intent to distribute 50 or more grams of cocaine base (*i.e.*, crack cocaine), in violation of 21 U.S.C. §§ 846 and 841(a)(1), and knowingly using a communication facility in committing the acts alleged in Count One, in violation of 21 U.S.C. § 843(b).  **Bill of Indictment, filed February 17, 2009, at 1-2.**  The trial on these charges is scheduled for May 12, 2009.

## II.  FINDINGS OF FACT

Special Agent Daniel Guzzo has been employed with the United States Drug Enforcement Administration ("DEA") since January 2002, and is currently assigned to the Asheville Division of the DEA.  Special  Agent Guzzo appeared before the Magistrate Judge on or about February 2, 2009, and provided an affidavit in support of an application for a search warrant for a residence located at 14 Pinehurst in Asheville, North Carolina, a house where Special Agent Guzzo knew Defendants Bruton and Fountain resided.  The affidavit provides details concerning an ongoing investigation into drug activity that began on or about October 24, 2008.

The investigation consisted, in part, of physical surveillance of the 14

Pinehurst residence and information gathered through wiretaps of phone

conversations between Defendants Bruton and Kenneth Lee Foster.  The

investigation involves Special Agent Guzzo, Asheville City Police

Department ("APD") Detective Geoffrey Rollins, APD SWAT Team Leader

Joseph Sorrells, and other law enforcement personnel.  Based on

information contained in the affidavit provided by Special Agent Guzzo, the

Magistrate Judge found probable cause to believe there was drug activity

occurring at the 14 Pinehurst location, and issued a search warrant

authorizing the search of the residence.  During the suppression hearing,

Special Agent Guzzo testified that no other information, save the affidavit,

was provided to the Magistrate Judge in support of the search warrant.

***See* Search Warrant (1:09-mj-8), issued February 2, 2009.**[1]

On or about 10 p.m., on February 5, 2009, Detective Rollins, SWAT

Leader Sorrells, Officer Chad Bridges, and other members of the Task

---

[1] The search warrant was admitted into evidence without objection as Defendant's Exhibit 1. The search warrant incorporates the application and affidavit in support of the search warrant and two attachments: Attachment 1 is a photocopied picture of the property at 14 Pinehurst; Attachment 2 is a list of items or places that were authorized to be searched under the warrant.

Force involved in the ongoing investigation appeared at the 14 Pinehurst residence to execute the search warrant. Members of the surveillance team informed the members of the Task Force that Defendants Bruton and Fountain had driven their cars to the 14 Pinehurst residence. Upon arrival, the Team noted that the vehicles belonging to Defendants Bruton and Fountain were positioned in the driveway and in front of the house. The residence is a three-bedroom house with a carport, den, and approximately 1300-1400 square feet of living space.

Members of the Task Force set up in the carport, at the front door, and around the patio at the back of the residence. Sorrells positioned himself by the sliding glass door at the patio and knocked loudly on the door for 10-15 seconds while also announcing in a loud voice that police were present with a search warrant for the residence. After no one came to the door or acknowledged the presence of law enforcement officers, members of the Task Force became concerned about the possible destruction of evidence. Officer Sean Ward attempted to open the sliding glass door. Rollins then kicked the door and was able to open it several inches. Rollins testified that the process of opening the door involved a great deal of noise. In an effort to safely enter, a flash device was placed

in the den that yielded a loud boom and a bright flash. Thereafter, the Team entered with weapons drawn and attempted to secure the residence. No one was injured by the flash bang device.

Rollins and Officer Bridges proceeded down a hallway to the door of what was later determined to be the master bedroom. While announcing they were police officers with a search warrant, they attempted to open the door. After turning the knob, they eventually had to force the door open. Once inside they saw Bruton falling away from the door. After placing Bruton in flexible plastic handcuffs, Bridges kicked open a closed door that led from the bedroom into the bathroom, and discovered Defendant Fountain standing next to the toilet with large pieces of what was later identified through a field test as crack cocaine. Through further search of the house, Team members discovered a 16-year-old juvenile in one bedroom along with her 5-month-old daughter.

During the hearing, Defendant Bruton called two witnesses to testify: 18-year-old Tiana Fountain, daughter of Defendant Fountain and step-daughter of Defendant Bruton; and 16-year-old Alexis Fountain, Defendant Fountain's daughter. Tiana testified that at the time the officers entered the house, there was no music playing and the television was on, but not at

a high volume.  Each witness denied hearing the police knock on the door

or announce their presence.  In fact, the defense witnesses denied

knowing the police were at the home until after the flash bang device had

discharged and the Team had entered the residence.


### III.  DISCUSSION

In the motion to suppress, Bruton challenges (1) whether there was

probable cause to support the issuance of the search warrant; and (2)

whether the execution of the warrant was unconstitutional such that the

resulting evidence should be suppressed.


### A.    Probable Cause for the Search Warrant

The Fourth Amendment provides that "no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be

seized."  **U.S. Const. amend. IV.**  "Although the concept of probable cause

resists an exacting definition, it 'exist[s] where the known facts and

circumstances are sufficient to warrant a man of reasonable prudence in

the belief that contraband or evidence of a crime will be found' in a

particular place." **United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).** A magistrate judge's determination of probable should be shown "great deference." **United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (citing Spinelli v. United States, 393 U.S. 410 (1969)).** This Court considers whether the magistrate judge had a "substantial basis" to find that the "search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." **Illinois v. Gates, 462 U.S. 213, 236 (1983) (citing Jones v. United States, 362 U.S. 257, 271 (1960)).**

Defendant Bruton contends that the search warrant issued by the Magistrate Judge lacks probable cause, therefore, the evidence recovered should be suppressed. After a review of the affidavit submitted in this matter, the Court concludes that the Magistrate Judge had a substantial basis for finding probable cause based on the totality of circumstances presented. The affidavit clearly identifies, among other facts, that, (1) the 14 Pinehurst residence was the home where Defendants Bruton and Fountain resided at the time of surveillance; (2) Bruton and co-Defendant Kenneth Foster regularly discussed the purchase of cocaine with Bruton agreeing to provide financing; (3) Bruton and Foster discussed the cooking

process whereby powder cocaine is converted to crack cocaine and further discussed yields of crack from the process; and (4) Foster traveled to the 14 Pinehurst residence to pick up currency from Bruton to finance one or more cocaine buys.  This information alone is sufficient to support the Magistrate Judge's finding of probable cause.  Accordingly, Defendants' objections to the issuance of the search warrant are overruled.

**B.    Execution of the Warrant**

Defendant contends that because the search warrant did not contain a "no-knock" provision that evidence obtained upon its execution should be suppressed.  The evidence shows this argument to be without merit.

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance[.]

**18 U.S.C. § 3109.**  The Court finds as a fact that in executing this search warrant, the officers knocked on the sliding glass door and loudly announced their presence for period of 10-15 seconds before attempting to enter.  The Court does not find the defense witnesses' contentions that they did not hear the officers announce their presence to be credible. The officers testified that after allowing 10-15 seconds for the door to be

opened by the persons within the house, they were concerned about the possible destruction of controlled substances if they further delayed entry. The Court finds 10-15 seconds of notice to the occupants in this instance is a reasonable amount of time to wait prior to beginning procedures to forcibly enter the house to execute the search warrant. Further, as the Team was attempting to enter the residence, they continued to call out "police, search warrant" in a loud voice that informed the occupants of the Teams' presence. The Court further finds that the occupants' failure to answer the door or otherwise acknowledge the presence of the officers after 15 seconds of loud knocking and announcements of their presence prior to an attempt at forcible entry, and the additional time spent in forcibly opening the sliding glass door, to be a "refused admittance." *See United States v. Banks*, 540 U.S. 31, 38 (2003) (finding that the **"issue comes down to whether it was reasonable to suspect imminent loss of evidence after 15 or 20 seconds the officers waited prior to forcing their way" and concluding "that after 15 or 20 seconds without a response, police could fairly suspect that cocaine would be gone if they were reticent any longer.").** Here, the evidence shows the destruction of evidence was well under way when police forced

their way into the master bedroom area and discovered cocaine scattered in and around the toilet in the adjoining bathroom. After consideration of the foregoing facts, the Court concludes that the police were reasonable in entering the house after the failure of the occupants to respond to repeated show of police presence. Accordingly, the Court concludes that the execution of the search warrant was proper.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Bruton's motion to suppress, joined by Defendants Beltran and Fountain, is hereby **DENIED.**

Signed: April 14, 2009

Lacy H. Thornburg
United States District Judge